# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| HOWARD ROSENBLATT, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br>-against-<br><br>MORGAN STANLEY SMITH BARNEY LLC<br><br>      Defendant. | Civil Action No.<br><br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br>June 29, 2011 |

Plaintiff Howard Rosenblatt, by his attorneys, alleges this class action complaint for himself and on behalf of all others similarly situated, based upon: (i) his own personal knowledge; (ii) his own acts and the acts and statements of the above-named defendant in which plaintiff participated directly, including the communications with, representations made, and documentation and information provided to plaintiff by defendant in the ordinary course of business; and (iii) the investigation of his counsel. Counsel's investigation conducted on plaintiff's behalf, included, among other things: (i) an analysis of publicly-available news articles and reports; (ii) a review and analysis of public filings, including but not limited to any by defendant; and (iii) other matters of public record. The allegations as to all other matters are based upon investigation by plaintiff's attorneys and research of the applicable law with respect to the claims asserted herein.

## NATURE OF THE ACTION

1.  Plaintiff brings this lawsuit as a collective action under the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*. (the "Collective Claim") and as a class action

pursuant to Fed. R. Civ. P. 23 on behalf of himself and all other persons similarly situated (the "Class Claim") who suffered damages as a result of the violations of the FLSA, and of the Labor Laws of the State of Connecticut.

      2.      The persons plaintiff seeks to represent are:

Current and former Financial Advisors (sometimes referred to as "Financial Consultants" and "Securities Brokers,") and/or financial advisor trainees who are or were: (i) employed by defendant in the United States (including the District of Columbia and Puerto Rico) on a commission or salary basis, and to whom defendant failed to pay overtime for work performed in excess of 40 hours per week as required by laws; (ii) were subjected to unlawful deductions from their pay by defendant; (iii) were unlawfully compelled to pay for defendant's business expenses; and/or (iv) were unlawfully charged back for commissions and/or the actual value of stock or other losses allegedly caused by them through simple negligence or through no fault of their own.

The positions in which the persons identified in this paragraph were employed by defendant are collectively referred to herein as "Covered Positions."

      3.      The groups and classes that plaintiff seeks to represent are:

      a.      the "Federal Collective Group" that consists of all individuals who were or are employed by defendant in Covered Positions in the United States of America, including the District of Columbia and Puerto Rico, at any time from April 21, 2008, who timely opt-in to any such collective group (the "Federal Eligibility Period"); and

      b.    the "Connecticut Class" that consists of all individuals, employed by defendants in Covered Positions in the State of Connecticut at any time since April 21, 2008 (the "Class Period").

4.    Defendant violated Section 207 of the FLSA, by not paying the Federal Collective Group overtime pay for a work week longer than forty hours.

5.    Defendant violated the rights of the Class under the Connecticut State Wage and Hour Law as follows:

      a.    Under Connecticut law, "any employer who pays or agrees to pay to an employee less than the minimum fair wage or overtime wage shall be deemed in violation of the provisions of this part." Conn. Gen. Stat. § 31-60(a).  A "wage" is defined as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation." Conn. Gen. Stat. § 31-71(a)(3).

      b.    In Connecticut, the workweek is forty hours and any time worked above that requires payment at the rate of time and a half.  Conn. Gen. Stat. § 31-76(c) ("No employer, except as otherwise provided herein, shall employ any of his employees for a workweek longer than forty hours, unless such employee receives remuneration for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.")

6.    As a result of defendant's violation of the FLSA and Connecticut labor laws, plaintiff and the members of the Class were illegally and grossly under-compensated for their work.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1331, federal question jurisdiction, 28 U.S.C. § 1332(d), the Class Action Fairness Act, and 28 U.S.C. § 1367, supplemental jurisdiction of state law claims.

8.      Venue is proper under 28 U.S.C § 1391(b)(1) because the defendant is resident in this district, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district. Plaintiff is also a resident in this district and worked for defendant in this district.

## PARTIES

9.      Plaintiff Howard Rosenblatt is a resident of West Hartford, Connecticut.

10.      During the Federal Eligibility Period and the Class Period plaintiff was employed in a Covered Position by defendant.  Plaintiff's primary duty as an employee of defendant was the sale of financial products to his individual clients.

11.      During the Federal Eligibility Period, plaintiff was not a "professional" as defined in 29 C.F.R. § 541.300(a); nor did plaintiff perform executive or administrative functions as defined in 29 C.F.R. § 541.200(a).

12.      During the Federal Eligibility Period and Class Period Defendant Morgan Stanley Smith Barney LLC ("MSSB") was organized as a Limited Liability Corporation under Delaware law with headquarters in New York, New York.  MSSB is a wholly owned subsidiary of Morgan Stanley Smith Barney Holdings LLC, of which 51% is reportedly owned indirectly by Morgan Stanley & Co., Inc, and 49% by Citigroup Inc.

13.      The corporate headquarters of MSSB is located at 1585 Broadway, New York, NY 10036. MSSB has nine offices in Connecticut, including Greenwich, Stamford, Westport, New Haven, Hartford, West Hartford, Madison, Essex, and Mystic.

14.     MSSB offers a wide variety of financial products and provides financial services to a large and diversified group of clients, financial institutions and individuals.  MSSB's businesses include financial advisory services, sales, and trading in fixed income securities and related products, including foreign exchange and investment activities and new issue distribution of fixed income, equity and packaged products.  MSSB also offers brokerage and investment advisory services, financial and wealth planning services, annuity and insurance products, cash management and retirement plan services.  As of December 31, 2010, MSSB reportedly had over $23 billion in assets.

## COLLECTIVE ACTION ALLEGATIONS

15.     Plaintiff brings this action on behalf of himself and the Federal Collective Group pursuant to FLSA § 216(b).

16.     Plaintiff is informed and believes that MSSB has thousands of employees in Covered Positions in the United States, including the District of Columbia and Puerto Rico, in the Federal Collective Group and believes that the total number of employees in Covered Positions in the Federal Collective Group during the Federal Eligibility Period exceeds that amount.

17.     Plaintiff is similarly situated to the other members of the Federal Collective Group because they all: (a) worked for defendant in Covered Positions during the Federal Eligibility Period; (b) functioned exclusively or primarily as inside sales persons; (c) had limited or no administrative responsibilities; (d) were and are not professionals within the meaning of the FLSA; and (e) worked overtime hours without receiving overtime compensation.  As a result, there are questions of law and fact common to plaintiff and the Federal Collective Group; and, therefore, plaintiff has a well-defined community of interest with and is an adequate representative of the Federal Collective Group.

18.     The following questions of law and fact common to the Federal Collective Group predominate over questions which may affect only individual members of the Federal Collective Group:

a.      Whether defendant failed to adequately compensate the members of the Federal Collective Group for overtime hours worked as required by the FLSA, because plaintiff and the members of the Federal Collective Group are not exempt employees under the FLSA;

b.       Whether the members of the Federal Collective Group have been damaged and, if so, the extent of such damages; and

c.       Whether defendant willfully violated the FLSA and, if so, the extent of damages associated with such willful violation.

## CLASS ACTION ALLEGATIONS

19.     Plaintiff also brings this action on behalf of himself and the Connecticut Class, pursuant to Fed.R.Civ.P. 23.

20.     Plaintiff is informed and believes that there are hundreds of members of the Connecticut Class; thus, the Connecticut Class is so numerous that joinder of all class members is impractical.

21.     There are questions of law and fact common to the plaintiff and the other members of the Connecticut Class and, therefore, plaintiff is similarly situated to the other members of the Connecticut Class and is an adequate representative of the Connecticut Class.

22.     The following questions of law and fact are common to the State Law Class and predominate over questions which may affect only individual members of the State Law Class:

a.       Whether defendant failed to adequately compensate the members of the Connecticut Class for overtime hours worked as required by the Labor Laws of Connecticut, including Conn. Gen. Stat. §§ 31-60(a), 31-71(a)(3) and 31-76(c);

b.       Whether defendant wrongfully deducted monies from the wages of the members of the Connecticut Class and/or otherwise required Connecticut Class members to pay for support staff and other overhead expenses and for reversed trades in violation of Conn. Gen. Stat. § 31-71(e).

c.      Whether the members of the Connecticut Class have been damaged and, if so, the extent of such damages and whether the members of the Connecticut Class are entitled to penalties and, if so, the extent of such penalties.

23.     Plaintiff is asserting claims that are typical of the claims of the Connecticut Class. Plaintiff will fairly and adequately represent and protect the interests of the Connecticut Class and has no interests antagonistic to those of the other members of the Connecticut Class. Plaintiff has retained attorneys who are competent and experienced in the prosecution of class and collective action litigation.

24.     Plaintiff and the other members of the Connecticut Class have suffered damages as a result of defendant's wrongful conduct. Because of the size of the claims of the individual members of the Connecticut Class, few, if any, members of the Connecticut Class could afford to seek legal redress for the wrongs complained of herein. A class action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy between plaintiff and the other members of the Connecticut Class, and defendant.

## THE FACTS CONSTITUTING THE CLAIM

25.     Defendant sells securities and other financial products with offices nationwide.

26.     Plaintiff worked for defendant as a financial advisor during the Federal Eligibility Period and the Class Period.

27.     Plaintiff was an inside sales person whom defendant paid on a commission basis without any premium for overtime pay as required by law.

28.     Plaintiff's primary duties included contacting individuals who wished to purchase financial products, selling financial products to these individuals, assuring that client trades were successfully processed, and engaging in other activities to develop and service a book of business. As a financial advisor, plaintiff received a commission on sales. Under federal and

Connecticut state law, compensation in the form of commissions is a "wage" for purposes of the overtime laws.

29.     In connection with his primary duty of selling financial products, plaintiff met regularly with clients, often meeting for lunch or dinner for which plaintiff paid and was not reimbursed by defendant.

30.     Plaintiff did not engage in marketing activity aimed at promoting (*i.e.*, increasing, developing, facilitating, and/or maintaining) customer sales generally for MSSB.

31.     Defendant did not pay plaintiff for hours worked above 40 hours per week, as required by law.

32.     Plaintiff regularly worked in excess of 40 hours per week.

33.     After the markets closed at 4 p.m. Connecticut time, it was routine for plaintiff to continue to contact his own clients and potential clients and to complete necessary paperwork for several hours. Plaintiff also routinely made calls well after the market closed to potential clients in the Western United States where time differences made such a practice possible.

34.     Plaintiff regularly attended meetings at his branch office after the office closed for business.

35.     Defendant paid inside commission brokers solely on a 40-hour per week basis, and failed to pay those members of the Federal Collective Group and the Connecticut Class for overtime hours worked.

36.     Defendant knew that the normal course of conduct for plaintiff and the members of the Federal Collective Group and the Connecticut Class routinely included working more than 40 hours per week.

37.    Defendant knew that it was not paying plaintiff and the members of the Federal Collective Group and the Connecticut Class for hours worked in excess of 40 hours per week.

38.    With respect to defendant's employees who were commission brokers in the Connecticut Class, defendant impermissibly and unlawfully deducted from, or caused to be deducted from employees' wages compensation for (among other things, but not limited to these items) the salary and other overhead associated with the broker's assistant, trading errors, messenger services and salary "increments" for other support personnel.

39.    Plaintiff paid for messenger services and overnight mail delivery in connection with servicing his clients and obtaining new clients without reimbursement by defendant.

40.    In addition, as a result of the improper reduction in compensation described herein, the pensions of members of the Federal Collective Group and the Connecticut Class were reduced since the level of pension depended upon the level of compensation.

41.    Members of the Federal Collective Group and the Connecticut Class who were "trainees" received a fixed salary.

42.    A trainee was an employee of defendant who was learning the business of selling financial products and was preparing to take certain examinations required of securities brokers.

43.    A trainee routinely remained in that position for approximately one to two years. If after that time he or she did not have a sufficiently large book of business he or she would lose his or her job.

44.    Trainees routinely arrived at work at about 7:00 a.m. and did not leave work until well after the 4:00 p.m. closing.

45.    In addition, trainees routinely worked during the evening hours and on Saturdays.

46.     Plaintiff and the members of the Federal Collective Group were not "professionals" and did not perform executive or administrative functions as defined by the FLSA.

47.     Plaintiff and the members of the Connecticut Class were not "professionals" as defined by Connecticut Regulation §31-60-14, and did not perform executive or administrative functions as defined therein.

48.     Plaintiff and the other members of the Federal Collective Group were not, and are not, outside salesmen as defined in the FLSA since they performed their sales functions inside defendant's offices.

**FIRST CAUSE OF ACTION**
**Restitution for Failure to Pay Overtime to the Federal Class**
**(Violation of FLSA § 207 )**

49.     Plaintiff incorporates by reference all of the allegations of all prior paragraphs as though fully set forth herein.

50.     Section 207(a)(1) of the FLSA provides in pertinent part:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any work week is engaged in commerce or in the production of goods for commerce, for a work week longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1).

51.     Section 207(i) of the FLSA provides an exemption from the above provision for retail or service establishments. The Section 207(i) exemption does not apply to the Federal Collective Group herein because brokerage houses do not qualify as "retail or service establishments."

52.     Section 213(a)(1) of the FLSA provides an exemption for employees in executive, administrative or professional capacities.

53.     The Section 213(a)(1) exemption for executive or administrative personnel does not apply to members of the Federal Collective Group since they were not responsible for the supervision of defendant's other employees and since their primary duty is selling securities and other financial products to their individual clients.

54.     The Section 213(a)(1) exemption for employees employed in a professional capacity is inapplicable to plaintiff and other members of the Federal Collective Group because securities brokers who receive compensation in the form of commission are not employed in a bona fide professional capacity.

55.     The status of a securities broker is not a recognized profession in a field of science or learning, and the skills are acquired through experience and an apprenticeship and the passage of a series of exams through self-study rather than at any institution of higher learning.

56.     There is no generally recognized advanced degree from an institution of higher academic learning related to work as a stock broker, and even if there were, it is not generally required to have such a degree in order to become a financial advisor employee of defendant.

57.     Section 213(a)(1) also provides an exemption for employees employed in the capacity of outside salesperson. This exemption does not apply in this case because neither plaintiff nor the members of the Federal Collective Group were, or are, outside salespersons.

58.     The outside salesman exemption does not apply to plaintiff and the other members of the Federal Collective Group because they were *not* customarily and regularly engaged in making sales away from defendant's places of business.

59.     There are no other exemptions applicable to plaintiff and members the Federal Collective Group.

60.     For purposes of the FLSA, the employment practices of defendant were and are uniform throughout the United States including the District of Columbia and Puerto Rico, in all respects material to the claims asserted in this Complaint.

61.     As a result of defendant's failure to pay overtime, plaintiff and the members of the Federal Collective Group were damaged in an amount to be proven at trial.

62.     In committing the wrongful acts alleged to be in violation of the Fair Labor Standards Act, defendant acted willfully in that it knowingly, deliberately and intentionally failed to pay overtime to plaintiff and the other members of the Federal Collective Group.

63.     Therefore, plaintiff demands that he and the members of the Federal Collective Group be paid overtime compensation as required by the FLSA for every hour of overtime worked in any work week for which they were not compensated, plus liquidated damages, interest and attorneys' fees as provided by law.

## SECOND CAUSE OF ACTION
### Restitution for Failure to Pay Overtime to the Connecticut Class
### (Violation of Conn. Gen. Stat. §§ 31-60(a), 31-76(c))

64.     Plaintiff incorporates by reference all of the allegations of all prior paragraphs as though fully set forth herein.

65.     Under Connecticut law, "any employer who pays or agrees to pay to an employee less than the minimum fair wage or overtime wage shall be deemed in violation of the provisions of this part." Conn. Gen. Stat. § 31-60(a).

66.     A "wage" is defined as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation." Conn. Gen. Stat. § 31-71a(3).

67.     Plaintiff and all other members of the Class employed by defendant during the Class Period regularly work more than forty hours per week, and were, or are, compensated on either (i) a straight commission basis with no base salary, or (ii) entirely on salary, in either case with no premium pay for hours worked in excess of forty hours.

68.     In Connecticut, the workweek is forty hours and any time worked above that requires payment at the rate of time and a half. Conn. Gen. Stat. § 31-76(c) ("No employer, except as otherwise provided herein, shall employ any of his employees for a workweek longer than forty hours, unless such employee receives remuneration for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.")

69.     Plaintiff and the class are not exempt under Connecticut law from the Connecticut overtime pay laws since they are not executives, administrators, or professionals. Connecticut General Statute § 31-76i exempts from entitlement to overtime pay "(e) any person employed in

14

a bona fide executive, administrative or professional capacity as defined in the regulations of the labor commissioner issued pursuant to section 31-60." The regulations, at § 31-60-14 define "employee employed in a bona fide executive capacity" in pertinent part as:

> any employee (a) whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and (b) who customarily and regularly directs the work of two or more other employees therein; and (c) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and (d) who customarily and regularly exercise discretionary powers; and (e) who does not devote more than twenty percent . . . of his hours of work in the workweek to activities which are not directly and closely related to the performance   of the work described in subdivisions (a) to (d), inclusive, of this section . . . and (f) who is compensated for his services on a salary basis at a rate not less than . . . one hundred twenty-five dollars per week [after January 1, 1969]. . . . Any employee who is compensated on a salary basis at a rate of not less than one hundred seventy-five dollars per week . . . and whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all of the requirements of this section.

70.     Employees whose primary duty is to perform support services for the defendant's customers, for which defendant is paid, are production employees not entitled to the administrative exemption.  Specifically, the last sentence of 29 C.F.R. § 541.203(b) states that "an employee whose primary duty is selling financial products does not qualify for the administrative exemption."

71.     Because the provisions of the exemption are cumulative, each of the prerequisites must be satisfied, and thus, the absence of one of the requirements for the exemption ends the inquiry.

72.     There are no other exemptions applicable to plaintiff and members of the Connecticut Class.

73.     As a result of defendant's failure to pay overtime, plaintiff and the members of the Class were damaged in an amount to be proven at trial.

74.     Therefore, plaintiff demand that he and the members of the Class be paid overtime compensation as required by Connecticut wage and hour laws for every hour of overtime worked in any work week for which they were not compensated, plus interest and attorneys' fees as provided by law.

### THIRD CAUSE OF ACTION
### Impermissible Deductions from Employees' Wages
### (Conn. Gen. Stat. § 37-71(e))

75.     Plaintiff incorporates by reference all of the allegations of all prior paragraphs as though fully set forth herein.

76.     Conn. Gen. Stat. § 31-71(e), expressly prohibits employers from making unauthorized deductions from employees' wages.

77.     Under Connecticut law "[n]o employer may withhold or divert any portion of an employee's wages unless (1) the employer is required or empowered to do so by state or federal law, or (2) the employer has written authorization from the employee for deductions on a form approved by the commissioner, or (3) the deductions are authorized by the employee, in writing, for medical, surgical or hospital care or service, without financial benefit to the employer and recorded in the employer's wage record book." Conn. Gen. Stat. § 31-71(e).

78.     Thus, Conn. Gen. Stat. § 31-71(e) prohibits deductions from employees' wages unless the deductions are expressly authorized by and for the benefit of the employee, and are limited to the enumerated categories of permissible deductions.

16

79.     Deduction of overhead expenses provides a direct benefit to the employer, and only indirectly and tenuously benefits the employee. Furthermore, payment of the employer's overhead expenses certainly may not be likened to deductions for insurance or investment programs that are acceptable under the statute.

80.     Thus, the deductions at issue violate Conn. Gen. Stat. § 31-71(e) because they are neither for the benefit of the employee nor of a type allowable under the statute.

81.     As a result of defendant's improper deductions from the compensation of plaintiff and the Class, plaintiff and the members of the Class were damaged in an amount to be proven at trial.

82.     Therefore, plaintiff demands that defendant reimburse any members of the Class from whom it improperly withheld a portion of their compensation in order to pay overhead expenses of the defendant, plus interest and attorneys' fees as provided by law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of himself and other members of the Federal Collective Group and the Connecticut Class defined herein, pray for judgment and relief as follows:

1.      An order certifying that the action may be maintained as a collective action and class action on behalf of the Federal Collective Group and the Connecticut Class, respectively;

2.      Compensatory damages at one and one half the regular rate of pay for all hours worked in excess of forty a week in an amount to be proven at trial;

3.      Compensatory damages for improper deductions from compensation in an amount to be proven at trial;

4.      Disgorgement of profits derived from defendant's improper use of funds due and owed to plaintiff and the members of the Federal Collective Group and the Connecticut Class;

17

5.    Reasonable attorneys' fees;

6.    Costs of this suit;

7.    Pre- and post-judgment interest;

8.    Such other and further relief as the Court may deem necessary and appropriate;

and

9.    No penalties (statutory or otherwise), liquidated damages or punitive damages of

any kind under Connecticut law are sought in this action and are expressly waived.

THE PLAINTIFF

By: _____
David A. Slossberg  CT13116
Andrew W. Skolnick  CT13422
Hurwitz, Sagarin, Slossberg & Knuff, LLC
147 N. Broad Street
P.O. Box 112
Milford, CT  06460
Tele: (203) 877-8000
Fax:  (203) 878-9800
DSlossberg@hssklaw.com
ASkolnick@hssklaw.com